64 F.3d 661
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Deago SALES, Defendant-Appellant.
 No. 95-5021.
 United States Court of Appeals, Fourth Circuit.
 Argued July 10, 1995.
Decided Aug. 28, 1995.
 
 ARGUED: Scott Fitzgerald Wyatt, CHESHIRE, PARKER & MANNING, Raleigh, NC, for Appellant. Scott L. Wilkinson, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, NC, for Appellee. ON BRIEF: Joseph B. Cheshire, V, CHESHIRE, PARKER & MANNING, Raleigh, NC, for Appellant. Janice McKenzie Cole, United States Attorney, William Arthur Webb, Assistant United States Attorney, Steven Geoffrey Keating, Third Year Law Intern, Campbell Law School, Raleigh, NC, for Appellee.
 Before WILKINSON and LUTTIG, Circuit Judges, and SHEDD, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant William Deago Sales challenges on three grounds the denial of his motion to suppress evidence obtained in connection with his arrest for possession with intent to distribute cocaine. First, he contends that he was seized without reasonable suspicion when police officers questioned him behind an airport ticket counter. Second, he argues that he was constructively arrested without probable cause when an officer reached into his pocket and removed $19,000 in cash that he was carrying. And third, he argues in the alternative that he was constructively arrested without probable cause when the officer took control of the cash and refused to return it until he could investigate further. We discern no error by the district court, and therefore affirm.
 
 I.
 
 2
 On February 28, 1994, Sales purchased with cash a one-way first class ticket from New York to Greenville, South Carolina. New York is a known source city for illegal narcotics, and Greenville is a known destination city. Sales bought the ticket just minutes before the flight, checked one bag, and gave the ticket agent a disconnected return telephone number. When notified of this by a confidential informant, Special Agent William Weis of the North Carolina State Bureau of Investigation and Detective Johnny Graves of the Wake County Sheriff's Department approached Sales as he disembarked the plane during a stopover at Raleigh Durham International Airport.
 
 
 3
 The officers displayed police identification and asked to speak to Sales behind a ticket counter. Sales agreed. The officers observed that Sales was visibly nervous and his hands were shaking. They asked to see his ticket, and Sales produced it. Affixed to the ticket envelope was a baggage claim ticket. Weis then asked Sales for some identification and, while Sales was retrieving his driver's license, Weis noticed in Sales' left coat pocket a fist-sized bulge which he seemed to be trying to hide. Weis asked what the bulge was, and Sales responded that it was money. When Weis asked to see the money, Sales began to reach into his pocket to get it, but Weis stopped him and retrieved it himself.
 
 
 4
 At that point, Sales became increasingly nervous, and his voice and hands started shaking and his chest quivering. He began to look about furtively as if he might flee. When Weis asked about the source of the money, Sales responded that it was from non-casino gambling winnings in New York.
 
 
 5
 Weis then asked Sales to accompany him to the satellite police department at the airport. Weis told Sales that he was not under arrest and that he was free to leave, but that he was going to keep Sales' money until he could investigate the matter further. He told Sales that he would try to finish his questions before Sales' connecting flight began boarding.
 
 
 6
 Sales agreed, and accompanied the officers to the station. On the way, Weis asked Sales if he had checked any bags, and Sales replied that he had not. Upon arriving at the station, Weis asked Sales how much money he had had in his coat pocket, and, after counting it, Sales answered that he had had $19,000. Upon checking with the DEA, Weis discovered that Sales was listed in NADDIS as a known drug trafficker and that he was very familiar to Greenville DEA agents as a "multi-kilo" dealer.
 
 
 7
 Weis again asked Sales if he had checked any bags and Sales again said no, but, upon being confronted with his claim check ticket, Sales finally admitted that he had checked one bag. Weis asked for permission to search the bag, and Sales agreed. While they were waiting for the bag to be retrieved, Sales stated that he no longer wished to stay and that he would just "write-off" the $19,000 on his taxes. Weis then informed Sales that he was no longer free to leave and, believing him to be possibly dangerous, placed Sales in handcuffs.
 
 
 8
 When the suitcase arrived, Weis asked Sales for the key and for permission to search it. Sales produced the key and again gave permission to search the suitcase. Weis then opened the bag and discovered four kilo bricks of cocaine. Sales was immediately arrested.
 
 
 9
 Sales was indicted on one count of possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1). He then filed a motion to suppress the evidence obtained prior to his arrest. A federal magistrate conducted a hearing on the motion and recommended that the district court deny the motion. The district court did so, adopting the findings of the magistrate. Defendant then executed a plea agreement in which he reserved the right to appeal the denial of the motion to suppress. He was subsequently sentenced to 120 months imprisonment. Defendant now timely appeals the denial of the motion to suppress.
 
 II.
 
 10
 Sales contends that his detainment behind the airport ticket counter constituted an illegal seizure without a reasonable articulable suspicion.
 
 
 11
 The record reflects that Sales was asked to come behind the ticket counter and answer some questions, and that he agreed. Sales argues that the fact that one officer stood in front of him and the other behind transformed the consensual stop into a seizure because "a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.). We disagree. Like the magistrate and the district court, we see nothing in the record to support a conclusion that Sales' liberty was "restrained" either " 'by means of physical force or show of authority' "; nor does the fact that the questioning may have occurred in "cramped confines" nullify the consent admittedly given by Sales. Florida v. Bostick, 501 U.S. 429, 434-35 (1991) (quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968)); see also United States v. McFarley, 991 F.2d 1188, 1191-92 (4th Cir.1993). The magistrate found that the encounter was entirely consensual and, therefore, implicated "no Fourth Amendment interest." Florida v. Rodriguez, 469 U.S. 1, 5 (1984). This finding was not in error.
 
 III.
 
 12
 Sales also argues that Weis' reach into Sales' pocket to retrieve the cash constituted a constructive arrest without probable cause.
 
 
 13
 The magistrate found that when Weis asked Sales if he could see the money, Sales reached into his pocket to retrieve it for Weis. In our view, Sales thus consented to allow Weis to see the contents of his pocket. That Weis himself reached into Sales' pocket--"presumably as a safety precaution," according to the magistrate--does not vitiate Sales' consent.
 
 
 14
 Sales argues that, under California v. Hodari D., 499 U.S. 621 (1991), Weis' physical touching of Sales' pocket transformed the encounter into an arrest. We disagree. It is doubtful that Weis' reach into Sales' pocket constituted a touching of defendant's body, and, in any event, that touching was clearly not for the purpose of arresting Sales, see id. at 623-25.
 
 
 15
 Sales in essence confuses an arrest with a seizure. While every arrest is a seizure, not every seizure is an arrest. See id. at 623-28. At the very most, Weis' reach into Sales' pocket constituted a seizure of his person, subject under Terry only to the requirement of reasonable suspicion, not probable cause. By then, the officers certainly had a reasonable suspicion. Thus, any seizure of Sales would have been reasonable, and therefore constitutional, even in the absence of Sales' consent.
 
 IV.
 
 16
 In the alternative, Sales argues that when the officers took control of his money and informed him that they would keep it pending further investigation, he was constructively arrested without probable cause. Again, Sales appears to confuse an arrest with a seizure of his person. Certainly, the officers' action constituted a seizure of Sales' property, his cash. It is possible, although doubtful, that that seizure also constituted a seizure of Sales' person. See United States v. Place, 462 U.S. 696, 708-09 (1983). The distinction is of no moment, however, because the required justification for either seizure is the same--reasonable suspicion. Id. at 709; see also McFarley, 991 F.2d at 1191.
 
 
 17
 There is no support for Sales' mistaken assertion that the seizure of his property could constitute a constructive arrest. The seizure of his property could, at most, constitute an unreasonable seizure of that property in the absence of probable cause, but even so, such does not constitute an arrest. See Place, 462 U.S. at 709-10. Whether the seizure itself was unreasonable without probable cause is an inquiry dependent largely on two factors, the length of time that the property was in police custody and the diligence with which police performed their investigation while holding the seized property. Id. Sales challenges the police conduct in neither regard, and the record amply supports the reasonableness of the police behavior--and hence of the seizure.
 
 
 18
 Finally, there was easily reasonable suspicion at the time that the officers seized Sales' money. By then, Special Agent Weis knew the following: (1) that Sales had purchased a cash ticket, (2) one-way, (3) first class, (4) minutes before the flight, (5) from a known drug source city, (6) to a known drug destination city, (7) giving a disconnected telephone number, and (8) that he appeared visibly nervous, (9) he trembled and became even more agitated when confronted by the police, and (10) he began looking around as if he wanted to flee. Even more importantly, Weis also knew that (11) Sales had attempted to hide the bulge in his pocket, (12) the bulge had turned out to be an extremely large sum of cash, and (13) his explanation was completely non-verifiable--non-casino gambling.
 
 
 19
 Although any one (or even several) of these factors might alone be insufficient to establish a reasonable suspicion, together they provide a more than adequate basis for reasonable suspicion. See United States v. Sokolow, 490 U.S. 1, 3 (1989) (holding that reasonable suspicion existed where defendant purchased airline tickets in cash, was carrying $4000 in cash, gave the airline a false name and seemingly false telephone number, traveled from a known drug source city, stayed only 48 hours, appeared nervous, and checked no luggage).
 
 
 20
 We therefore hold that Officer Weis had reasonable suspicion to seize Sales' property until he could investigate further.
 
 CONCLUSION
 
 21
 For the reasons stated herein, we affirm the judgment of the district court.
 
 AFFIRMED